UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY FRANKLIN,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>R. FRANKLIN, ET AL.,<br><br>　　　　　Defendant(s). | Case No. CV 19-6255-CBM (KK)<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |

## I.
## **INTRODUCTION**

Plaintiff Gregory Franklin ("Plaintiff"), proceeding pro se and in forma pauperis, filed a Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging violations of his First, Eighth, and Fourteenth Amendment rights. For the reasons discussed below, the Court dismisses the Complaint with leave to amend.

## II.
## **ALLEGATIONS IN THE COMPLAINT**

On July 19, 2019, Plaintiff, an inmate at California State Prison – Los Angeles County ("CSP-LAC"), constructively filed[1] the Complaint against defendants (1)

---

[1] Under the "mailbox rule," when a pro se prisoner gives prison authorities a pleading to mail to court, the court deems the pleading constructively "filed" on the date it is signed. Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010); see

Lieutenant R. Franklin, (2) Lieutenant A.H. Martinez, (3) Correctional Officer J. Hernandez, (4) Correctional Officer E. Gollette, (5) Correctional Counselor II J. Tingely, (6) Correctional Officer E. Delgadillo, (7) Captain S. Rivera, (8) Chief Deputy Warden R. Johnson, (9) Associate Warden C. Wood, (10) Sergeant R. Aguirre, (11) Correctional Officer Drayton, (12) Correctional Officer J. Makarade, (13) Correctional Officer J. Resendiz, (14) Lieutenant I. Mijares, (15) Correctional Counselor S. Nave, (16) Correctional Officer Rios, (17) Sergeant Moses, (18) F. Villalobos, (19) Warden M. Stratman, (20) Correctional Officer K. Penate, (21) Correctional Officer G. Rodriguez, (22) Chief Appeal Officer T. Ramos, and (23) Correctional Officer D. Moore ("Defendants") in their individual and official capacities. ECF Docket No. ("Dkt.") 1. Plaintiff alleges each Defendant violated his First, Eighth, and Fourteenth Amendment rights.

The Complaint sets forth the following allegations:

On February 13, 2012, Plaintiff arrived at CSP-LAC after being transferred from Calpatria State Prison. Id. at 13-14. While at Calpatria State Prison, Plaintiff had filed a civil rights lawsuit in 2007 against thirteen correctional officers at Calpatria State Prison, a second civil rights lawsuit in June 2008 against eight correctional officers at Calpatria State Prison, and a third civil rights lawsuit in 2011 against seven correctional officers at Calpatria State Prison. Id. at 12-13.

At some point after his transfer to CSP-LAC, defendants Rodriguez and Moses told Plaintiff they were placing another inmate in Plaintiff's cell. Id. at 15. Defendant Rodriguez "said he was aware of Plaintiff suing officers." Id. at 16. Plaintiff stated he "needed to see the prisoner before he [would] accept him as a cellmate." Id. at 15. Before Plaintiff met the proposed cellmate, however, Plaintiff was placed in administrative segregation for "refusing a cellie." Id. Defendant Franklin "said he provided Plaintiff a disciplinary hearing and he found Plaintiff guilty," but no

---

Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (stating the "mailbox rule applies to Section 1983 suits filed by pro se prisoners").

2

disciplinary hearing occurred. Id. at 15-16. As a result, Plaintiff spent 60 days confined to his cell with "no outdoor or inside recreation." Id. at 16.

On July 21, 2015, defendants Rodriguez and Moses again told Plaintiff an inmate had been assigned to his cell. Id. at 17. Plaintiff told them "he don't want no cellie that is violent and psychotic." Id. Plaintiff was given a rule violation for "refusing a cellie." Id. Defendant Martinez, the hearing officer for Plaintiff's disciplinary hearing, refused to call Plaintiff's requested witnesses and found Plaintiff guilty of the rule violation. Id. As a result, Plaintiff was confined to his cell for 90 consecutive days immediately following the previous 60 days for a total of five months. Id. at 17-18.

On July 21, 2015, defendant Moore packed Plaintiff's property and placed it in Release and Receiving for Plaintiff to receive when he was released from administrative segregation. Id. at 34. On August 17, 2015, Plaintiff was released from administrative segregation and received his property. Id. His legal work, however, was missing and several inmates told Plaintiff they saw a bundle of legal work on the dayroom floor after Plaintiff's property was taken to Release and Receiving. Id.

On September 13, 2015, Plaintiff was placed on "C-status" (i.e., "privilege group C") for the two rule violations for refusing "a cellie." Id. at 18. On November 1, 2015, Plaintiff sent a request to defendants Nave and Tingely, correctional counselors, to remove Plaintiff from C-status. Id. at 19. Both defendants Nave and Tingely "made comments about Plaintiff['s] pending lawsuits," denied him a hearing regarding his removal from C-status, and refused to take Plaintiff off C-status. Id.

On October 11, 2015, Plaintiff filed a lawsuit against five CSP-LAC employees, including defendant Martinez. Id. at 20. On October 19, 2017, defendant Martinez supervised cell searches in the building where Plaintiff was housed. Id. at 20. After the search, Plaintiff's food items were missing. Id. The cell search receipt stated defendant Gollette and Hernandez had conducted the search. Id. at 20-21.

3

Defendant Gollette "had previously made comments about Plaintiff bringing lawsuits." Id. at 21.

At his annual classification hearings on October 19, 2016 and October 10, 2017, Plaintiff's requests to be transferred to a lower security prison, have "single cell status", and to enter "rehabilitative/work programs" were denied. Id. at 22. Counselor Tingely, who had previously told Plaintiff "it disturb[s] him Plaintiff ha[s] brought lawsuit's [sic] against his co-horts," was the chairperson for the annual classification on October 19, 2016, and defendant Rivera was the chairperson on October 10, 2017. Id.

Ten days after Plaintiff's annual classification[2] and one day after Plaintiff wrote a grievance challenging the denial of his request for single cell status, defendant Penata wrote Plaintiff a rule violation for refusing "a cellie." Id. at 23. Defendant Villalobos found Plaintiff guilty of the rule violation, which resulted in "90 days loss of telephone, credits, dayroom, and clean time." Id.

On an unspecified date, Plaintiff gave defendant Delgadillo a complaint regarding loss of personal property to mail to the Government Claim Board, but the complaint never reached the Government Claim Board and it was not logged into the mailroom. Id. at 24-25. On August 14, 2017 and November 2, 2017, defendant Delgadillo refused to pick up Plaintiff's mail. Id. at 25.

On January 7, 2018, defendant Aguirre interviewed Plaintiff regarding Plaintiff's grievance against defendant Delgadillo. Id. at 26. During the interview, defendant Aguirre told Plaintiff he could give Plaintiff a "cellie" and if Plaintiff refused, Plaintiff would be disciplined. Id. Defendant Aguirre then asked Plaintiff whether he wanted to withdraw the grievance against defendant Delgadillo. Id. Plaintiff refused to withdraw the grievance. Id. The next day, defendant Aguirre

---

[2] It is unclear whether this incident occurred after the 2016 or 2017 annual classification hearings.

4

wrote Plaintiff up for refusing a "cellie," resulting in 90 days of lost privileges and placement on C-status. Id.

On February 12, 2018 and February 19, 2018, defendant Drayton refused to sign Plaintiff's laundry slip to have Plaintiff's laundry returned to him and stated "until Plaintiff take[s] a cell-mate he will not have his laundry replaced." Id. at 27. Therefore, Plaintiff had to sleep on dirty sheets for "numerous weeks" and his "body was itching excessively." Id.

On April 2, 2018, defendant Drayton moved Plaintiff to another building where defendants Resendiz and Makarade told Plaintiff he would be moving into a cell with another inmate. Id. at 28. Plaintiff refused. Id. Defendants Resendiz and Makarade handcuffed Plaintiff and took him to the cage in the gym to await being sent to administrative segregation. Id. at 29. Defendant Mijares interviewed Plaintiff regarding his refusal to share a cell. Id. Plaintiff was then placed in administrative segregation from April 2, 2018 to April 14, 2018. Id.

On April 14, 2018, defendant Rios took Plaintiff's appliances because Plaintiff was being placed on C-status. Id. at 30. On July 3, 2018, Plaintiff was released from C-status and asked defendant Rios for his appliances. Id. Receiving and Release told Plaintiff defendant Rios had to retrieve the appliances and defendant Rios told Plaintiff other officers had to retrieve them. Id. at 30-31. On August 7, 2018, Plaintiff's appliances were returned to him. Id. at 31.

Finally, defendant Stratman has implemented a policy, which defendant Ramos is enforcing, that discriminates against inmates in the same privilege group because inmates that are working are allowed to receive night yard and inmates that are not working are not allowed to receive night yard. Plaintiff alleges this policy was implemented as retaliation against "prison litigators" like himself because their jobs may be taken away "on a whim," and without a job, they are arbitrarily denied night yard. Id. at 32.

Plaintiff seeks punitive damages and injunctive relief. Id. at 35.

# III.
# **STANDARD OF REVIEW**

Where a plaintiff is incarcerated and/or proceeding in forma pauperis, a court must screen the complaint under 28 U.S.C. §§ 1915 and 1915A and is required to dismiss the case at any time if it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A; see Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

Under Rule 8, a complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief," and "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a), (d). In determining whether a complaint fails to state a claim for screening purposes, a court applies the same pleading standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012).

A complaint may be dismissed for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007). In considering whether a complaint states a claim, a court must accept as true all of the material factual allegations in it. Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011). However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The complaint "must contain sufficient allegations of

1 | underlying facts to give fair notice and to enable the opposing party to defend itself
2 | effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

"A document filed pro se is 'to be liberally construed,' and a 'pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008). However, liberal construction should only be afforded to "a plaintiff's factual allegations," Neitzke v. Williams, 490 U.S. 319, 330 n.9, 109 S. Ct. 1827, 104 L. Ed. 2d 339 (1989), and a court need not accept as true "unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations," Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003).

If a court finds the complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Leave to amend should be granted if it appears possible the defects in the complaint could be corrected, especially if the plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995). However, if, after careful consideration, it is clear a complaint cannot be cured by amendment, the court may dismiss without leave to amend. Cato, 70 F.3d at 1107-11; see also Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009).

### IV.

### **DISCUSSION**

**A. THE ELEVENTH AMENDMENT BARS ALL SECTION 1983 CLAIMS FOR MONETARY DAMAGES AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITY**

**1. Applicable Law**

"The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state." Brooks v. Sulphur Springs Valley Elec. Co-op., 951 F.2d 1050, 1053 (9th Cir. 1991) (citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)). This jurisdictional bar

includes "suits naming state agencies and departments as defendants," and it applies whether a plaintiff "seek[s] damages or injunctive relief." Id.; Pennhurst State School, 465 U.S. at 102. As to state officials sued in their official capacity, the Eleventh Amendment immunizes state officials sued in their official capacity from claims for retrospective relief (including monetary damage claims) but does not immunize them from claims for prospective relief (such as forward-looking injunctive relief). Kentucky v. Graham, 473 U.S. 159, 169-70, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 2d 714 (1908).

**2.  Analysis**

Here, Plaintiff's claims against Defendants in their official capacity for monetary damages are barred by the Eleventh Amendment. See Graham, 473 U.S. at 169-70 (holding the Eleventh Amendment bar "remains in effect when State officials are sued for damages in their official capacity"). Thus, Plaintiff's claims against Defendants in their official capacity for monetary damages are subject to dismissal.

**B.  THE COMPLAINT IMPROPERLY JOINS DISTINCT CLAIMS AND FAILS TO COMPLY WITH RULE 8**

**1.  Applicable Law**

A basic lawsuit is a single claim against a single defendant. Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant. Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). In contrast, unrelated claims against different defendants must be brought in separate lawsuits to avoid confusion and prevent "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (noting that unrelated claims against different defendants should be brought in

different lawsuits, in part to prevent prisoners from circumventing filing-fee requirements and three-strikes rule under Prison Litigation Reform Act); Gonzalez v. Maldonado, No. 1:11-cv-01774-SAB (PC), 2013 WL 4816038, at *2 (E.D. Cal. Sept. 9, 2013) (same).

Rule 8 "has been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling." Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058-59 (9th Cir. 2011) (discussing cases in which the Ninth Circuit affirmed Rule 8 dismissals); see also Nevijel v. N. Coast Life Ins. Co., 651 F.2d 671, 674 (9th Cir. 1981) (affirming dismissal with prejudice of a first amended complaint that "was 23 pages long with 24 pages of addenda, named additional defendants without leave of court, and was equally as verbose, confusing and conclusory as the initial complaint"). Moreover, a complaint may be dismissed for violating Rule 8 even if "a few possible claims" can be identified and the complaint is not "wholly without merit." McHenry v. Renne, 84 F.3d 1172, 1177-79 (9th Cir. 1996) (stating that Rule 8's requirements apply "to good claims as well as bad" and affirming the dismissal of a complaint under Rule 8 for being "argumentative, prolix, replete with redundancy, and largely irrelevant"). Complaints that fail to comply with Rule 8 "impose unfair burdens on litigants and judges" who "cannot use [such] complaint[s]" and "must prepare outlines to determine who is being sued for what." Id. at 1179-80; Jacobson v. Shwarzenegger, 226 F.R.D. 395, 397 (C.D. Cal. 2005) ("Neither the court nor the defendants should be compelled to cull through pages of rambling narrative, argument and needless digression to discover the factual bases for [Plaintiff's] claims."). "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." Bautista v. L.A. Cty., 216 F.3d 837, 841 (9th Cir. 2000).

///

**2. Analysis**

Here, the Complaint is a narrative of numerous unrelated incidents involving twenty-three defendants allegedly violating Plaintiff's rights from 2015 through the present. See dkt. 1. The improper joinder of various unrelated claims against different defendants imposes an unfair burden on the Court and Defendants to decipher "who is being sued for what." See McHenry, 84 F.3d at 1177-79. For example, the Complaint improperly joins claims against defendants Moses and Rodriguez for allegedly fabricating rules violations with claims against defendant Drayton for refusing to return Plaintiff's laundry and with claims against defendant Delgadillo for refusing to pick up and deliver Plaintiff's mail.

Plaintiff appears to have intended to join his claims on the grounds that each defendant retaliated against him because of his litigation activity. First, conclusory allegations of retaliation are insufficient to state a claim for retaliation. See Williams v. Wood, 223 F. App'x 670 (9th Cir. 2007) (affirming dismissal of conclusory allegations of retaliatory transfer "because these claims lacked factual support demonstrating a causal link between the civil actions [plaintiff] has filed and the denial of a transfer"); Wise v. Washington State Dep't of Corrections, 244 Fed. App'x 106, 108 (9th Cir. 2007), cert. denied, 552 U.S. 1282, 128 S. Ct. 1733, 170 L. Ed. 2d 518 (2008) (finding plaintiff's conclusory allegations of retaliation insufficient "without supporting facts connecting the defendants to his litigation activities"); Stine v. Bureau of Prisons, No. 2:18-CV-0684-KJN (P), 2018 WL 2771332, at *6 (E.D. Cal. June 7, 2018) (finding plaintiff's generalized assertion regarding retaliation insufficient to demonstrate that each named defendant retaliated against plaintiff for his protected conduct). Second, even if each incident of retaliation was based on the same alleged protected conduct, each incident does not arise out of the same "transaction, occurrence, or series of transactions" and is, therefore, improperly joined under Rule 20. See Hollis v. Gonzalez, No. 1:08-CV-1834-OWW-DLB (PC), 2010 WL 2555781, at *6 (E.D. Cal. June 18, 2010), report and recommendation adopted, 2010 WL 3153963 (E.D. Cal.

Aug. 9, 2010) (dismissing unrelated claims of retaliation for "grievance activity" against different prison staff members as improperly joined).

Hence, Plaintiff's various unrelated claims against different defendants must be brought in separate lawsuits. At this juncture, the Court declines to cull through the Complaint to determine which, if any, of Plaintiff's distinct claims are sufficiently pled. Plaintiff may, therefore, file an amended complaint setting forth properly joined claims, but must file separate lawsuits to pursue any unrelated claims.

## V.

## **LEAVE TO FILE A FIRST AMENDED COMPLAINT**

For the foregoing reasons, the Complaint is subject to dismissal. As the Court is unable to determine whether amendment would be futile, leave to amend is granted. See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam). Plaintiff is advised that the Court's determination herein that the allegations in the Complaint are insufficient to state a particular claim should not be seen as dispositive of that claim. Accordingly, while the Court believes Plaintiff has failed to plead sufficient factual matter in his pleading, accepted as true, to state a claim to relief that is viable on its face, Plaintiff is not required to omit any claim in order to pursue this action. However, if Plaintiff asserts a claim in his First Amended Complaint that has been found to be deficient without addressing the claim's deficiencies, then the Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately will submit to the assigned district judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

Accordingly, IT IS ORDERED THAT **within twenty-one (21) days** of the service date of this Order, Plaintiff choose one of the following two options:

1. Plaintiff may file a First Amended Complaint to attempt to cure the deficiencies discussed above. **The Clerk of Court is directed to mail Plaintiff a**

**blank Central District civil rights complaint form to use for filing the First Amended Complaint, which the Court encourages Plaintiff to use.**

If Plaintiff chooses to file a First Amended Complaint, he must clearly designate on the face of the document that it is the "First Amended Complaint," it must bear the docket number assigned to this case, and it must be retyped or rewritten in its entirety, preferably on the court-approved form. Plaintiff shall not include new defendants or allegations that are not reasonably related to the claims asserted in the Complaint. In addition, the First Amended Complaint must be complete without reference to the Complaint, or any other pleading, attachment, or document.

An amended complaint supersedes the preceding complaint. Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). After amendment, the Court will treat all preceding complaints as nonexistent. Id. **Because the Court grants Plaintiff leave to amend as to all his claims raised here, any claim raised in a preceding complaint is waived if it is not raised again in the First Amended Complaint.** Lacey v. Maricopa Cty., 693 F.3d 896, 928 (9th Cir. 2012).

The Court advises Plaintiff that it generally will not be well-disposed toward another dismissal with leave to amend if Plaintiff files a First Amended Complaint that continues to include claims on which relief cannot be granted. "[A] district court's discretion over amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint.'" Ismail v. Cty. of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012); see also Ferdik, 963 F.2d at 1261. Thus, **if Plaintiff files a First Amended Complaint with claims on which relief cannot be granted, the First Amended Complaint will be dismissed without leave to amend and with prejudice.**

2. Alternatively, Plaintiff may voluntarily dismiss the action without prejudice, pursuant to Federal Rule of Civil Procedure 41(a). **The Clerk of Court is**

**directed to mail Plaintiff a blank Notice of Dismissal Form, which the Court encourages Plaintiff to use if he chooses to voluntarily dismiss the action.**

**Plaintiff is explicitly cautioned that failure to timely respond to this Order will result in this action being dismissed with prejudice for failure to state a claim, or for failure to prosecute and/or obey Court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Dated: August 27, 2019

HONORABLE KENLY KIYA KATO
United States Magistrate Judge