UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY FRANKLIN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>R. FRANKLIN, ET AL.,<br><br>　　　　　Defendant(s). | Case No. CV 19-6255-CBM (KK)<br><br>ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |

## I.

## **INTRODUCTION**

Plaintiff Gregory Franklin ("Plaintiff"), proceeding pro se and in forma pauperis, filed a First Amended Complaint ("FAC") pursuant to 42 U.S.C. § 1983 ("Section 1983") setting forth twelve claims against seventeen defendants in their individual and official capacities and alleging each defendant violated his First, Eighth, and Fourteenth Amendment rights. For the reasons discussed below, the Court dismisses the FAC with leave to amend.

///

///

///

///

## II.

## **ALLEGATIONS IN THE COMPLAINT**

On July 19, 2019, Plaintiff, an inmate at California State Prison – Los Angeles County ("CSP-LAC"), constructively filed[1] a Complaint against twenty-three defendants in their individual and official capacities alleging each defendant violated his First, Eighth, and Fourteenth Amendment rights. ECF Docket No. ("Dkt.") 1. On August 27, 2019, the Court dismissed the Complaint with leave to amend finding (a) the Eleventh Amendment bars any claims for monetary damages against the defendants in their official capacity; and (b) the Complaint improperly joined distinct claims and failed to comply with Federal Rule of Civil Procedure 8. Dkt. 5.

On October 15, 2019, Plaintiff constructively filed the instant FAC, which appears to name the following seventeen defendants in their individual and official capacities: (1) Lieutenant R. Franklin, (2) Lieutenant A.H. Martinez, (3) Correctional Officer J. Hernandez, (4) Correctional Officer E. Gollette, (5) Correctional Counselor II J. Tingely, (6) Correctional Officer E. Delgadillo, (7) Captain S. Rivera, (8) Sergeant R. Aguirre, (9) Correctional Officer Drayton, (10) Correctional Officer J. Makarade, (11) Correctional Officer J. Resendiz, (12) Lieutenant I. Mijares, (13) Correctional Counselor S. Nave, (14) Correctional Officer Rios, (15) F. Villalobos, (16) Correctional Officer K. Penate, and (17) Correctional Officer D. Moore ("Defendants"). Dkt. 8 at 3-9.

The FAC sets forth the following allegations:

On February 13, 2012, Plaintiff arrived at CSP-LAC after being transferred from Calpatria State Prison. Id. at 23. Beginning in 2005, while at Calpatria State Prison, Plaintiff filed numerous grievances and civil rights lawsuits against various

---

[1] Under the "mailbox rule," when a pro se prisoner gives prison authorities a pleading to mail to court, the court deems the pleading constructively "filed" on the date it is signed. Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010); see Douglas v. Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (stating the "mailbox rule applies to Section 1983 suits filed by pro se prisoners").

correctional officers. Id. at 10-23. Plaintiff alleges numerous individuals responded by retaliating against him and that retaliatory acts have continued from 2005 through the present. Dkt. 8-1 at 5.

At some point after Plaintiff's transfer to CSP-LAC, officers Rodriguez and Moses, who do not appear to be named as defendants in the FAC, told Plaintiff they were placing another inmate in Plaintiff's cell. Id. at 5. Plaintiff stated he "needed to see the prisoner before he [would] accept him as a cellmate." Id. Before Plaintiff met the proposed cellmate, however, Plaintiff was placed in an administrative housing unit for refusing a cellmate. Id. at 5, 7. Plaintiff states: "There was a disciplinary hearing and I was found guilty, and for 60 days Plaintiff did not receive [] outdoor or inside recreation confining Plaintiff to his cell because he had no work assignment." Id. at 7. Plaintiff alleges defendant Franklin (a) "violated due process when he failed to provide Plaintiff a disciplinary hearing, but impose[d] punishment upon him"; (b) "subjected Plaintiff to cruel and unusual punishment when he arbitrarily confined Plaintiff to his cell for 60 consecutive days"; and (c) violated the First Amendment when he "committed the unconstitutional violations for retaliation." Id.

On July 8, 2015, officers Rodriguez and Moses again told Plaintiff an inmate had been assigned to his cell. Id. at 6. Plaintiff told them "he don't want no cellie that is violent and psychotic." Id. Plaintiff was given a rule violation for "refusing a cellie." Id. Defendant Martinez, the hearing officer for Plaintiff's disciplinary hearing, refused to call Plaintiff's requested witnesses and found Plaintiff guilty of the rule violation. Id. As a result, Plaintiff was confined to his cell for 90 consecutive days immediately following the previous 60 days for a total of five months. Id. at 6, 8.

On July 21, 2015, defendant Moore packed Plaintiff's property and placed it in Release and Receiving for Plaintiff to receive when he was released from administrative segregation. Id. at 11. On August 17, 2015, Plaintiff was released from administrative segregation and received his property. Id. His legal work, however,

3

was missing and several inmates told Plaintiff they saw a bundle of legal work on the dayroom floor after Plaintiff's property was taken to Release and Receiving. Id.

Meanwhile, Plaintiff alleges a group grievance regarding denial of adequate fresh air and recreation he first submitted on May 11, 2015 was repeatedly screened out until he was placed in the administrative segregated housing on July 21, 2014. Id. at 3. Plaintiff alleges "the administration tried to get the next person on the group [grievance] to drop the [grievance], [but] he would not and the [grievance] was granted July 28, 2015 but wasn't enforce[d] until Plaintiff got out of the hole, August 2015." Id.

On September 13, 2015, Plaintiff was placed on "C-status" (i.e., "privilege group C") for the two rule violations for refusing "a cellie." Id. at 8. On November 1, 2015, Plaintiff sent a request to defendants Nave and Tingely, correctional counselors, to remove Plaintiff from C-status. Id. Both defendants Nave and Tingely "made comments about Plaintiff['s] pending lawsuits," denied him a hearing regarding his removal from C-status, and refused to take Plaintiff off C-status. Id.

On October 11, 2015, Plaintiff filed a lawsuit against five CSP-LAC employees, including defendant Martinez. Id. at 9. On October 19, 2017, before Plaintiff could file his opposition to the motion to dismiss his second amended complaint filed in that action, defendant Martinez supervised cell searches in the building where Plaintiff was housed. Id. at 9-10. After the search, Plaintiff's food items were missing. Id. The cell search receipt stated defendant Gollette and Hernandez had conducted the search. Id. at 10. Defendant Gollette "had previously made comments about Plaintiff['s] lawsuits." Id.

On October 19, 2016 and October 10, 2017, during his annual classification hearings, Plaintiff's requests to be transferred to a lower security prison, have "single cell status", and to enter "rehabilitative work programs" were denied. Id. at 12. Counselor Tingely was the chairperson for the annual classification on October 19, 2016 and defendant Rivera was the chairperson on October 10, 2017. Id.

4

Ten days after Plaintiff's annual classification[2] and one day after Plaintiff wrote a grievance challenging the denial of his request for single cell status, officer Penata, who does not appear to be named as a defendant in the FAC, wrote Plaintiff a rule violation for refusing "a cellie." Id. at 13. Defendant Villalobos found Plaintiff guilty of the rule violation. Id.

On an unspecified date, Plaintiff gave defendant Delgadillo a complaint to mail to the Government Claim Board regarding loss of personal property, but the complaint never reached the Government Claim Board and it was not logged into the mailroom. Id. at 14. On August 14, 2017 and November 2, 2017, defendant Delgadillo refused to pick up Plaintiff's mail. Id. at 14-15.

On January 7, 2018, defendant Aguirre interviewed Plaintiff regarding Plaintiff's grievance against defendant Delgadillo. Id. at 15. During the interview, defendant Aguirre told Plaintiff he could give Plaintiff a "cellie" and if Plaintiff refused, Plaintiff would be disciplined. Id. Defendant Aguirre then asked Plaintiff whether he wanted to withdraw the grievance against defendant Delgadillo. Id. Plaintiff refused to withdraw the grievance. Id. at 15-16. The next day, defendant Aguirre wrote Plaintiff up for refusing a "cellie," resulting in 90 days of lost privileges, disqualification to lower level transfer, and subsequent placement on C-status. Id. at 16.

On February 12, 2018 and February 19, 2018, defendant Drayton refused to sign Plaintiff's laundry slip to have Plaintiff's laundry returned to him and stated "until Plaintiff take[s] a cell-mate he will not have his laundry replaced." Id. at 17. As a result, Plaintiff slept on a dirty sheet for "numerous weeks" and his "body was itching excessively." Id.

On April 2, 2018, defendant Drayton moved Plaintiff to another building where defendants Resendiz and Makarade told Plaintiff he would be moving into a

---

[2] It is unclear whether this incident occurred after the 2016 or 2017 annual classification hearings.

1 cell with another inmate. Id. at 17-18. Plaintiff refused. Id. at 18. Defendants
2 Resendiz and Makarade handcuffed Plaintiff and took him to the cage in the gym to
3 await being sent to administrative segregation. Id. Defendant Mijares interviewed
4 Plaintiff regarding his refusal to share a cell. Id. Plaintiff was then placed in
5 administrative segregation from April 2, 2018 to April 14, 2018. Id. at 19.

On April 14, 2018, defendant Rios took Plaintiff's appliances because Plaintiff was being placed on C-status. Id. On July 3, 2018, Plaintiff was released from C-status and asked defendant Rios for his appliances. Id. at 19-20. Receiving and Release told Plaintiff defendant Rios had to retrieve the appliances, while defendant Rios told Plaintiff other officers had to retrieve them. Id. at 20. On August 7, 2018, Plaintiff's appliances were returned to him. Id.

Plaintiff seeks punitive damages and injunctive relief requiring: (a) the Court oversee "all present and future rule violations"; (b) the Court review all complaints brought by Plaintiff within 72 hours; (c) prior notification to the Court and a designated family member before moving Plaintiff from general population to administrative segregation; (d) single cell status; and (e) "[i]n the event Plaintiff has to be remove[d] from prison and transported to courts, hospital, etc., [a] video recording of the entire trip." Id. at 21.

### III.
### STANDARD OF REVIEW

Where a plaintiff is incarcerated and/or proceeding in forma pauperis, a court must screen the complaint under 28 U.S.C. §§ 1915 and 1915A and is required to dismiss the case at any time if it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A; see Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998).

Under Rule 8, a complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief," and "[e]ach allegation must be simple,

6

concise, and direct." Fed. R. Civ. P. 8(a), (d). In determining whether a complaint fails to state a claim for screening purposes, a court applies the same pleading standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Watison v. Carter, 668 F.3d 1108, 1112 (9th Cir. 2012).

A complaint may be dismissed for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007). In considering whether a complaint states a claim, a court must accept as true all of the material factual allegations in it. Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011). However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

"A document filed pro se is 'to be liberally construed,' and a 'pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008). However, liberal construction should only be afforded to "a plaintiff's factual allegations," Neitzke v. Williams, 490 U.S. 319, 330 n.9, 109 S. Ct. 1827, 104 L. Ed. 2d 339 (1989), and a court need not accept as true "unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations," Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003).

If a court finds the complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000). Leave to amend should be granted if it appears possible the defects in the complaint could be corrected, especially if the plaintiff is pro se. Id. at 1130-31; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995). However, if, after careful consideration, it is clear a complaint cannot be cured by amendment, the court may dismiss without leave to amend. Cato, 70 F.3d at 1107-11; see also Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009).

## IV.

## DISCUSSION

**A. THE ELEVENTH AMENDMENT BARS ALL SECTION 1983 CLAIMS FOR MONETARY DAMAGES AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITY**

**1. Applicable Law**

"The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state." Brooks v. Sulphur Springs Valley Elec. Co-op., 951 F.2d 1050, 1053 (9th Cir. 1991) (citing Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)). This jurisdictional bar includes "suits naming state agencies and departments as defendants," and it applies whether a plaintiff "seek[s] damages or injunctive relief." Id.; Pennhurst State School, 465 U.S. at 102. As to state officials sued in their official capacity, the Eleventh Amendment immunizes state officials sued in their official capacity from claims for retrospective relief (including monetary damage claims) but does not immunize them from claims for prospective relief (such as forward-looking injunctive relief). Kentucky v. Graham, 473 U.S. 159, 169-70, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); Edelman v. Jordan, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974); Ex Parte Young, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 2d 714 (1908).

///

### 2. Analysis

Here, Plaintiff's claims against Defendants in their official capacity for monetary damages are barred by the Eleventh Amendment. See Graham, 473 U.S. at 169-70 (holding the Eleventh Amendment bar "remains in effect when State officials are sued for damages in their official capacity"). Thus, Plaintiff's claims against Defendants in their official capacity for monetary damages are subject to dismissal.

## B. THE REQUEST FOR INJUNCTIVE RELIEF MUST BE STRICKEN

### 1. Applicable Law

"[A] court's equitable power lies only over the merits of the case or controversy before it." Pac. Radiation Oncology, LLC v. Queen's Med. Ctr., 810 F.3d 631, 633 (9th Cir. 2015). Without a "relationship or nexus [between the requested injunction and the harm alleged], the district court lacks authority to grant the relief requested." Id. at 636-37. Therefore, "[w]hen a plaintiff seeks injunctive relief based on claims not pled in the complaint, the court does not have the authority to issue an injunction." Id. at 633.

### 2. Analysis

Plaintiff requests the Court issue an injunction requiring: (a) the Court oversee "all present and future rule violations"; (b) the Court review all complaints brought by Plaintiff within 72 hours; (c) prior notification to the Court and a designated family member before moving Plaintiff from general population to administrative segregation; (d) single cell status; and (e) "[i]n the event Plaintiff has to be remove[d] from prison and transported to courts, hospital, etc., [a] video recording of the entire trip." Dkt. 8-1 at 21. However, Plaintiff does not allege a sufficient relationship or nexus between his claims and his requested injunctive relief. The underlying claims in the FAC are that Defendants retaliated against Plaintiff for filing grievances and civil rights cases. Plaintiff does not allege these claims arose from a lack of Court supervision, a lack of single cell status, or video surveillance, nor does he allege any "relationship or nexus" between his claims and the requested relief. See Pac.

1 | Radiation Oncology, 810 F.3d at 636-37. Rather, it is entirely speculative that video surveillance or Court supervision would have deterred or prevented the alleged retaliation. Thus, because Plaintiff fails to allege a sufficient relationship, the "[C]ourt lacks the authority to grant the relief requested," and the request for injunctive relief must be stricken.

**C. THE FAC FAILS TO COMPLY WITH RULE 8**

    **1. Applicable Law**

Rule 8 "has been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling." Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058-59 (9th Cir. 2011) (discussing cases in which the Ninth Circuit affirmed Rule 8 dismissals); see also Nevijel v. N. Coast Life Ins. Co., 651 F.2d 671, 674 (9th Cir. 1981) (affirming dismissal with prejudice of a first amended complaint that "was 23 pages long with 24 pages of addenda, named additional defendants without leave of court, and was equally as verbose, confusing and conclusory as the initial complaint"). Moreover, a complaint may be dismissed for violating Rule 8 even if "a few possible claims" can be identified and the complaint is not "wholly without merit." McHenry v. Renne, 84 F.3d 1172, 1177-79 (9th Cir. 1996). Complaints that fail to comply with Rule 8 "impose unfair burdens on litigants and judges" who "cannot use [such] complaint[s]" and "must prepare outlines to determine who is being sued for what." Id. at 1179-80; Jacobson v. Shwarzenegger, 226 F.R.D. 395, 397 (C.D. Cal. 2005) ("Neither the court nor the defendants should be compelled to cull through pages of rambling narrative, argument and needless digression to discover the factual bases for [Plaintiff's] claims."). "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." Bautista v. L.A. Cty., 216 F.3d 837, 841 (9th Cir. 2000).

///

### 2. Analysis

Here, the FAC is a narrative of numerous unrelated incidents involving seventeen defendants alleged to have violated Plaintiff's rights from 2015 through the present. See dkt. 8. Plaintiff begins the FAC with thirteen pages describing the circumstances of every grievance and civil rights action he filed between 2005 and 2012 when he was confined at Calpatria State Prison. This narrative is needlessly long and the details do not appear to be relevant to establishing the claims set forth in the FAC. See Cafasso, 637 F.3d at 1058-59; Jacobson, 226 F.R.D. at 397. Moreover, the improper joinder of various unrelated claims against different defendants imposes an unfair burden on the Court and Defendants to decipher "who is being sued for what." See McHenry, 84 F.3d at 1177-79. Hence, the FAC must be dismissed for failure to comply with Rule 8.

## D. THE FAC IMPROPERLY JOINS DISTINCT CLAIMS

### 1. Applicable Law

A basic lawsuit is a single claim against a single defendant. Federal Rule of Civil Procedure 18(a) allows a plaintiff to add multiple claims to the lawsuit when they are against the same defendant. Federal Rule of Civil Procedure 20(a)(2) allows a plaintiff to join multiple defendants to a lawsuit where the right to relief arises out of the same "transaction, occurrence, or series of transactions" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). In contrast, unrelated claims against different defendants must be brought in separate lawsuits to avoid confusion and prevent "the sort of morass [a multiple claim, multiple defendant] suit produce[s]." George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (noting that unrelated claims against different defendants should be brought in different lawsuits, in part to prevent prisoners from circumventing filing-fee requirements and three-strikes rule under Prison Litigation Reform Act); Gonzalez v. Maldonado, No. 1:11-cv-01774-SAB (PC), 2013 WL 4816038, at *2 (E.D. Cal. Sept. 9, 2013) (same). When numerous claims are misjoined, the court can generally dismiss

all but the first named defendant without prejudice to the institution of new, separate lawsuits against some or all of the present defendants based on the claim or claims attempted to be set forth in the present complaint. Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997); Kirakosian v. J&L Sunset Wholesale & Tobacco, No. 2:16-CV-06097-CAS (AJWx), 2017 WL 3038307, at *3 (C.D. Cal. July 18, 2017) ("An accepted practice under Rule 21 is to dismiss all defendants except for the first defendant named in the complaint.").

**2. Analysis**

Here, the FAC improperly joins twelve claims against seventeen defendants in their individual and official capacities. For example, the FAC joins a claim against defendant Franklin for denial of due process in connection with a disciplinary hearing and placement in administrative segregation, with a claim against defendant Drayton for refusing to return Plaintiff's laundry, with claims against defendant Delgadillo for refusing to pick up and deliver Plaintiff's mail.

Moreover, Plaintiff's apparent attempt to join his claims on the grounds that each defendant retaliated against him because of his litigation activity fails. First, conclusory allegations of retaliation are insufficient to state a claim for retaliation. See Williams v. Wood, 223 F. App'x 670 (9th Cir. 2007) (affirming dismissal of conclusory allegations of retaliatory transfer "because these claims lacked factual support demonstrating a causal link between the civil actions [plaintiff] has filed and the denial of a transfer"); Wise v. Washington State Dep't of Corrections, 244 Fed. App'x 106, 108 (9th Cir. 2007), cert. denied, 552 U.S. 1282, 128 S. Ct. 1733, 170 L. Ed. 2d 518 (2008) (finding plaintiff's conclusory allegations of retaliation insufficient "without supporting facts connecting the defendants to his litigation activities"); Stine v. Bureau of Prisons, No. 2:18-CV-0684-KJN (P), 2018 WL 2771332, at *6 (E.D. Cal. June 7, 2018) (finding plaintiff's generalized assertion regarding retaliation insufficient to demonstrate that each named defendant retaliated against plaintiff for his protected conduct). Second, even if each incident of retaliation was based on the same alleged

12

protected conduct, each adverse action is distinct and the claims, therefore, do not arise out of the same "transaction, occurrence, or series of transactions." See Hollis v. Gonzalez, No. 1:08-CV-1834-OWW-DLB (PC), 2010 WL 2555781, at *6 (E.D. Cal. June 18, 2010), report and recommendation adopted, 2010 WL 3153963 (E.D. Cal. Aug. 9, 2010) (dismissing unrelated claims of retaliation for "grievance activity" against different prison staff members as improperly joined). Hence, Plaintiff's various unrelated claims against different defendants are improperly joined under Rule 20 and must be brought in separate lawsuits.

In the event Plaintiff files a Second Amended Complaint that once again improperly joins unrelated claims and defendants, the Court will be inclined to dismiss all but the first named defendant, Lieutenant R. Franklin, without prejudice. See Kirakosian, 2017 WL 3038307, at *3. Accordingly, the Court will now address the merits of the claims against defendant Franklin as set forth in Claim 1 of the FAC.

### 3. The FAC Fails to State a Retaliation Claim Against Defendant Franklin

#### a. Applicable Law

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a Section 1983 claim. See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) the prisoner engaged in protected conduct; (2) an assertion that a state actor took some adverse action against an inmate; (3) the adverse action was "because of" the prisoner's protected conduct; (4) the adverse action chilled the inmate's exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

#### b. Analysis

Here, Plaintiff alleges defendant Franklin "committed the unconstitutional violations for retaliation." Dkt. 8-1 at 7. Plaintiff does not, however, specifically state

for which protected conduct defendant Franklin was acting in retaliation. While not entirely clear, it appears Plaintiff may be alleging defendant Franklin was retaliating against Plaintiff because of a group grievance Plaintiff had been trying to submit since May 2015. However, it is unclear when Plaintiff was found guilty by defendant Franklin of the first rule violation that resulted in the first 60-day confinement in administrative segregation, i.e., whether it was before or after the May 2015 grievance was submitted. In addition, there is no allegation in the FAC that defendant Franklin was aware of the group grievance. Hence, Plaintiff's retaliation claim against defendant Franklin is subject to dismissal.

### 4. The FAC Fails to State an Eighth Amendment Cruel and Unusual Punishment Claim Against Defendant Franklin

#### a. Applicable Law

Prison officials violate the Eighth Amendment's prohibition against cruel and unusual punishment when they deny humane conditions of confinement with deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). To state a conditions of confinement claim, an inmate must show objective and subjective components. Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002). The objective component requires an "objectively insufficiently humane condition violative of the Eighth Amendment" which poses a substantial risk of serious harm. Osolinski v. Kane, 92 F.3d 934, 938 (9th Cir. 1996). The subjective component requires prison officials acted with the culpable mental state, which is "deliberate indifference" to the substantial risk of serious harm. Farmer, 511 U.S. at 837-38; Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976).

"[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of

14

serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837-38.

    **b.**  **Analysis**

Here, Plaintiff's claim for violation of the Eighth Amendment is based on his 60 days spent in administrative segregation due to defendant Franklin finding him guilty of a rule violation. Dkt. 8-1 at 5-7. However, a term of 60 days in administrative segregation, without more, does not constitute cruel and unusual punishment in violation of the Eighth Amendment. See Anderson v. Cty. of Kern, 45 F.3d 1310, 1315-16 (9th Cir.), amended on denial of reh'g, 75 F.3d 448 (9th Cir. 1995) (finding "[a]n indeterminate sentence in administrative segregation, without more, does not constitute cruel and unusual punishment in violation of the Eighth Amendment"). Nothing alleged in the FAC demonstrates Plaintiff's time in administrative segregation was an "objectively insufficiently humane condition violative of the Eighth Amendment" which poses a substantial risk of serious harm. Compare Osolinski, 92 F.3d at 938 with Jordan v. Fitzharris, 257 F. Supp. 674, 676-83 (N.D. Cal. Sept. 6, 1966) (holding defendants violated the Eighth Amendment where they housed plaintiff for twelve consecutive days in solitary confinement in a cell six feet by eight feet in dimension, with no furnishings except a toilet, no interior source of light, and which was not cleaned regularly and did not contain any means for plaintiff to clean himself); see also May v. Baldwin, 109 F.3d 557, 566 (9th Cir. 1997) (rejecting plaintiff's claims disciplinary segregation violated the Eighth Amendment because plaintiff "failed to allege facts establishing the deprivation of adequate food, drinking water, sanitation, or personal hygiene items"). Further, Plaintiff offers no facts showing defendant Franklin acted while knowing of and disregarding an excessive risk to Plaintiff's health or safety. See Farmer, 511 U.S. at 837-38. Therefore, Plaintiff's Eighth Amendment claim against defendant Franklin is subject to dismissal.

///

### 5. The FAC Fails to State a Fourteenth Amendment Due Process Claim Against Defendant Franklin

#### a. Applicable Law

The Due Process Clause of the Fourteenth Amendment protects individuals against deprivations of "life, liberty, or property." U.S. Const. amend. XIV, § 1. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005) (citations omitted). Due process analysis "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." Swarthout v. Cooke, 562 U.S. 216, 219, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011).

Courts have held prisoners have "no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest," but they do have "the right not to be deprived of a protected liberty interest without due process of law." Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986); see also Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (finding inmate's claims based upon falsity of charges brought by a prison counselor did not state a constitutional claim). In order to establish the deprivation of a protected liberty interest, a prisoner must allege an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Sandin v. Conner, 515 U.S. 472, 486, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995). In order to establish the denial of procedural protections afforded by due process, a prisoner must allege denial of the requirements set forth in Wolff v. McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974), which include written notice, the right to call witnesses, the right to present documentary evidence, and the right to have a written statement by the

factfinder as to the evidence relied upon and the reasons for the disciplinary action taken. See Serrano v. Francis, 345 F.3d 1071, 1077-78 (9th Cir. 2003).

      **b.**    **Analysis**

Here, Plaintiff appears to allege a Fourteenth Amendment due process claim against defendant Franklin for finding him guilty of a "false" rule violation. First, Plaintiff has no due process right to be free from false accusations. See Freeman, 808 F.2d at 951; see also Sprouse, 870 F.2d at 452. Additionally, while Plaintiff alleges he was placed in administrative segregation and confined to his cell for 60 days with "no outdoor or inside recreation", such placement fails to constitute an "atypical, significant deprivation in which a State might conceivably create a liberty interest." Sandin, 515 U.S. at 486 (holding "segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"). Finally, it is unclear whether Plaintiff has alleged he was denied the procedural protections set forth in Wolff. Plaintiff states "[t]here was a disciplinary hearing and [he] was found guilty" and in the very next paragraph of the FAC states defendant Franklin "failed to provide Plaintiff a disciplinary hearing but imposed punishment upon him." Dkt. 8-1 at 7.

Accordingly, Plaintiff's Fourteenth Amendment due process claim against defendant Franklin is subject to dismissal.

## V.

## **LEAVE TO FILE A SECOND AMENDED COMPLAINT**

For the foregoing reasons, the FAC is subject to dismissal. As the Court is unable to determine whether amendment would be futile, leave to amend is granted. See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam). Plaintiff is advised that the Court's determination herein that the allegations in the FAC are insufficient to state a particular claim should not be seen as dispositive of that claim. Accordingly, while the Court believes Plaintiff has failed to plead sufficient factual matter in his pleading, accepted as true, to state a claim to relief that is viable on its

17

face, Plaintiff is not required to omit any claim in order to pursue this action. However, if Plaintiff asserts a claim in his Second Amended Complaint that has been found to be deficient without addressing the claim's deficiencies, then the Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately will submit to the assigned district judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

Accordingly, IT IS ORDERED THAT **within twenty-one (21) days** of the service date of this Order, Plaintiff choose one of the following two options:

1. Plaintiff may file a Second Amended Complaint to attempt to cure the deficiencies discussed above. **<u>The Clerk of Court is directed to mail Plaintiff a blank Central District civil rights complaint form to use for filing the Second Amended Complaint, which the Court encourages Plaintiff to use.</u>**

If Plaintiff chooses to file a Second Amended Complaint, he must clearly designate on the face of the document that it is the "Second Amended Complaint," it must bear the docket number assigned to this case, and it must be retyped or rewritten in its entirety, preferably on the court-approved form. Plaintiff shall not include new defendants or allegations that are not reasonably related to the claims asserted in the FAC. In addition, the Second Amended Complaint must be complete without reference to the FAC, Complaint, or any other pleading, attachment, or document.

An amended complaint supersedes the preceding complaint. <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1262 (9th Cir. 1992). After amendment, the Court will treat all preceding complaints as nonexistent. <u>Id.</u> **Because the Court grants Plaintiff leave to amend as to all his claims raised here, any claim raised in a preceding complaint is waived if it is not raised again in the Second Amended Complaint.** <u>Lacey v. Maricopa Cty.</u>, 693 F.3d 896, 928 (9th Cir. 2012).

The Court advises Plaintiff that it generally will not be well-disposed toward another dismissal with leave to amend if Plaintiff files a Second Amended Complaint that continues to include claims on which relief cannot be granted. "[A] district court's discretion over amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint.'" Ismail v. Cty. of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012); see also Ferdik, 963 F.2d at 1261. Thus, **if Plaintiff files a Second Amended Complaint with claims on which relief cannot be granted, the Second Amended Complaint will be dismissed without leave to amend and with prejudice.**

2. Alternatively, Plaintiff may voluntarily dismiss the action without prejudice, pursuant to Federal Rule of Civil Procedure 41(a). **The Clerk of Court is directed to mail Plaintiff a blank Notice of Dismissal Form, which the Court encourages Plaintiff to use if he chooses to voluntarily dismiss the action.**

**Plaintiff is explicitly cautioned that failure to timely respond to this Order will result in this action being dismissed with prejudice for failure to state a claim, or for failure to prosecute and/or obey Court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Dated: November 21, 2019

_____
HONORABLE KENLY KIYA KATO
United States Magistrate Judge

19